UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMY ANDERSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-03578-JPH-MJD ) |
| QDOBA RESTAURANT CORPORATION, | ) ) |
| Defendant. | ) |

**PRETRIAL ORDER ON MOTIONS IN LIMINE AND RELATED ISSUES**

Amy Anderson has sued Qdoba Restaurant Corporation for negligence, alleging that "a large Qdoba table umbrella . . . struck [her] in the back of the head with force" on a windy day in May 2017. Dkt. 1-1 at 4–5 ¶ 5. Both parties have filed motions in limine. Dkt. [63]; dkt. [74].[1] Ms. Anderson has also moved to admit the deposition of expert witness Bryan K. Rappolt, dkt. [59], and Qdoba has objected, dkt. [76].

Motions in limine are designed to "streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Courts "have broad discretion in ruling on evidentiary questions . . . on motions *in limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).

---

[1] At the Final Pretrial Conference, the parties agreed that no ruling is necessary for 15 evidentiary categories identified in Ms. Anderson's motion and for 5 categories in Qdoba's motion. *See* dkt. 96 at 4. As a result, this order considers only the remaining contested evidentiary categories from the motions in limine.

# I.
# Ms. Anderson's Motion in Limine

## A. 2018 car accident and related medical records

Ms. Anderson was involved in a car accident in 2018, about a year after she was allegedly struck by the umbrella. She seeks to exclude evidence of injuries she sustained in that car accident and the corresponding medical treatment she received. Dkt. 63 at 3–4 ¶¶ 2, 4.

### 1. Similar or dissimilar injuries

Ms. Anderson contends that evidence about the car accident and her resulting injuries have "no probative value[,] . . . would be calculated to mislead and confuse the jury, and work to . . . prejudice [her]." *Id.* at 3 ¶ 2. Qdoba argues that "relevancy will be established by both [Ms. Anderson's] treating physicians and [by its] expert, who will be able to provide the competent proof necessary to connect Ms. Anderson's injuries with her prior and subsequent events." Dkt. 87 at 1–2 ¶ 2.

"Evidence concerning prior similar injuries may be admissible for both substantive and impeachment purposes." *Couch v. Wal-Mart Stores, Inc.*, 191 F.3d 455 (7th Cir. 1999) (unpublished table decision) (citing *O'Shea v. Jewel Tea Co.*, 233 F.2d 530, 532 (7th Cir. 1956)). In negligence actions, Indiana courts have held that "testimony as to a prior accident is relevant where there is competent proof from which it could be inferred that the injury complained of is attributable to the prior or subsequent event." *Flores v. Gutierrez*, 951 N.E.2d 632, 640 (Ind. Ct. App. 2011).

Ms. Anderson appears to concede admissibility if Qdoba offers "competent medical testimony" showing "a connection between this line of questioning and [her] . . . injuries." Dkt. 63 at 3 ¶ 2. Because Qdoba claims that its medical expert will connect Ms. Anderson's car-accident injuries to the damages at issue in this case, dkt. 87 at 1–2 ¶ 2, the Court **DENIES** Ms. Anderson's motion to exclude all evidence of similar and dissimilar injuries.

### 2. Healthcare treatment "unrelated" to conditions in issue

At the October 29, 2020 hearing, Qdoba's counsel stated that they plan to introduce medical records from ATI Physical Therapy indicating that the 2018 car accident caused "pain in [Ms. Anderson's] hips and legs, . . . swelling in [her] ankles, [a] fracture in her back, [and] bruising and bleeding." Qdoba contends that these records show that the accident was "severe" and that physical therapy would help "get her pain under control."

#### a. Relevance

Ms. Anderson contends that this evidence is not relevant to the shoulder injury that she claims to have sustained when she was struck by the umbrella. *See, e.g.*, dkt. 63 at 4. Qdoba responds that the evidence is relevant for two reasons. First, its "expert will opine on [Ms. Anderson's] medical history that is causally and historically related to the issues in this case." Dkt. 87 at 2 ¶ 4. Second, Ms. Anderson previously claimed that the umbrella accident hurt both her shoulder *and* her hip.

Evidence is relevant if it has "any tendency to make a fact" of consequence "more or less probable than . . . without the evidence." Fed. R.

3

Evid. 401. Here, the medical records related to Ms. Anderson's car-accident may affect the jury's assessment of the source of her claimed injuries. For example, the jury may determine that a portion of Ms. Anderson's injuries were caused by the car accident, not from being struck by the umbrella. Or it may not. Either way, the evidence is relevant.

Ms. Anderson also makes the generic argument that the probative value of any evidence about the car accident is substantially outweighed by a danger of unfair prejudice and confusion of the issues. Dkt. 63 at 3 ¶ 2; *see* Fed. R. Evid. 403. But Ms. Anderson has not explained how these specific medical records give rise to dangers of undue emotionalism or juror misuse. *See* dkt. 63. The Court **DENIES** Ms. Anderson's motion to exclude these medical records on this ground.

### b. Privilege

Ms. Anderson claims that the ATI records relating to the 2018 car accident "remain[] privileged" under Indiana law because she "did not waive, nor . . . consent to, an invasion of her privacy with respect to medical/mental health records completely unrelated to conditions at issue in this lawsuit." Dkt. 63 at 4 ¶ 4. Qdoba responds that these records are not protected by the privilege because Ms. Anderson's "medical history is relevant to the condition at issue." Dkt. 87 at 2 ¶ 4.

Under Indiana law, a patient-physician privilege protects "matters communicated" to physicians by patients in their professional relationship.

*See* Ind. Code § 34-46-3-1(2).[2]  However, "when a patient who is a party to a lawsuit places his mental or physical condition in issue, . . . he has impliedly waived the privilege to that extent."  *Doherty v. Purdue Properties I, LLC*, 153 N.E.3d 228, 238 (Ind. Ct. App. 2020) (quoting *Canfield v. Sandock*, 563 N.E.2d 526, 529 (Ind. 1990)).  There is an exception to the implied waiver that may apply in "rare cases" when the "party seeking to assert the privilege" specifically identifies documents that are "irrelevant to the condition in issue" and are "of a highly intimate or embarrassing nature."  *Owen v. Owen*, 563 N.E.2d 605, 608 (Ind. 1990).  Upon such a showing, the information "remains privileged and therefore protected from discovery."  *Canfield*, 563 N.E.2d at 530.

Here, Ms. Anderson has placed her physical condition at issue in this lawsuit by alleging that she was injured and that Qdoba's negligence was the cause of her injury.  *See* dkt. 1-1 at 5 ¶ 7 (Ms. Anderson alleging "severe and permanent injuries to numerous parts of her body" as a "direct and proximate result" of Qdoba's conduct).  Thus, Ms. Anderson has waived the patient-physician privilege to that extent.  *See Doherty*, 153 N.E.3d at 238.  And Ms. Anderson has not designated any documents as irrelevant and highly intimate, or explained why certain specific documents should qualify for the exception to the implied waiver and be protected from discovery.  *See Owen*, 563 N.E.2d at 608.

---

[2] "[S]tate law governs privilege regarding a claim or defense for which state law supplies the rule of decision" in civil cases.  Fed. R. Evid. 501; *see Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004) (indicating that state law may allow "more stringent medical-records privilege[s] . . . in suits in federal court . . . in which state law supplies the rule of decision.").

Because these treatment records relating to her car accident are relevant and not privileged, the Court **DENIES** Ms. Anderson's motion to exclude them.

### B. Medical bills and payments

Ms. Anderson also seeks to exclude "[a]ny testimony or evidence of [her] medical bills and payments, adjustments and write offs by collateral sources or any evidence . . . concerning the amount of medical expenses she has incurred or paid." Dkt. 63 at 9 ¶ 17. She argues that she has "withdrawn all claims . . . for past medical expenses" and "will not offer any evidence as to the amount of the medical expenses." *Id.* Because she seeks only "general damages," Ms. Anderson contends that any admission of her medical expenses is irrelevant, prejudicial, confusing to the jury, unnecessarily cumulative, and protected by Indiana's "collateral source" doctrine. *Id.* at 9–14 ¶ 17.

Qdoba argues that the medical bills are "relevant and admissible to aid the jury in assessing the extent of [Ms. Anderson's] injuries." Dkt. 87 at 5. Qdoba also contends that Ms. Anderson has not withdrawn her claims for past medical expenses because she has not filed an amended complaint and that she has a Medicare lien against any recovery from this action. *Id.* at 4–5; *see* dkt. 94 at 2.

Federal Rule 403 allows a district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

6

Here, the probative value of the medical bills is limited because Ms. Anderson does not seek reimbursement for medical expenses, *see* dkt. 63 at 9 ¶ 17, and Qdoba has not shown a correlation between the financial information on the medical bills and the nature or degree of Ms. Anderson's claimed damages. Moreover, evidence of medical bills may confuse a jury and cause undue delay. The bills' descriptions of medical services could require testimony of witnesses from medical offices about the office's labeling procedures and the treatments listed on each bill. And more probative evidence on this point is available, such as Ms. Anderson's testimony and the testimony of her treating physicians, *see* dkt. 58 (listing witnesses), which would make the medical bills needlessly cumulative. To the extent that the medical bills reflect reimbursements from insurance providers, this could violate Indiana's collateral source rule which disallows evidence about certain insurance benefits in personal injury suits. *See* Ind. Code § 34-44-1-2*; In re Air Crash Disaster Near Chicago, Ill., On May 25, 1979*, 803 F.2d 304, 308 (7th Cir. 1986) (stating that "a federal court sitting in diversity must apply the collateral source rule of the state whose law governs the case").

Finally, Ms. Anderson was not obligated to amend her complaint to narrow the scope of relief she seeks. *See CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729, 743–44 (7th Cir. 2015). The risks of unfair prejudice, jury confusion, undue delay, and unnecessarily cumulative evidence substantially outweigh the limited probative value of the medical bills. *See* Fed. R. Evid.

403. The Court **GRANTS** Ms. Anderson's motion to exclude medical bills.[3] Of course, like all motions in limine, this ruling is provisional and subject to change should Ms. Anderson open the door to such evidence during trial.

## II.
## Qdoba's Motions

### A. Unidentified person yelling "No, No, No"

At her deposition, Ms. Anderson testified that she heard an unidentified person yell, "No, No, No," before the umbrella allegedly struck her. Dkt. 75 at 6 ¶ 7. Qdoba seeks to exclude this evidence from trial as inadmissible hearsay. *Id.* At the October 2020 hearing, Ms. Anderson's counsel contended that this falls under the hearsay exception for excited utterances.

Rule 803(2) provides a hearsay exception for a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." This places the burden on "the party seeking to admit the statement" to establish that: "(1) a startling event occurred; (2) the declarant ma[de] the statement while under the stress of excitement caused by the startling event; and (3) the declarant's statement relates to the startling event." *United States v. Vargas*, 689 F.3d 867, 876–77 (7th Cir. 2012). Qdoba disputes the last two elements because no evidence shows that "the unidentified declarant personally observed" the startling event (the umbrella allegedly hurling through the wind towards Ms. Anderson). Dkt. 75 at 8 ¶ 7.

---

[3] Accordingly, the Court **DENIES** Qdoba's motion to *admit* medical bills. *See* dkt. 74 at 3 ¶ 5.

A hearsay declarant must have "firsthand knowledge" of the matters in her testimony. Fed. R. Evid. 803, Advisory Committee's Note to 1972 Proposed Rules. Rule 803(2) is thus consistent with "cases [that] indicate hesitancy in upholding [a] statement alone as sufficient" when the "declarant is an unidentified bystander." *Id.*

Here, Ms. Anderson has not shown that the declarant made the statement under stress or excitement relating to the startling event. *See Vargas*, 689 F.3d at 876–77. Given the accident's location near Meridian and Washington in the middle of downtown Indianapolis, *see* dkt. 1-1 at 4 ¶ 4, the declarant's statement could have referred to any number of events, *see* dkt. 75 at 8 (citing examples of a "child running loose, dropping papers, [and] receiving bad news on a phone call"). Without more, the declarant's alleged awareness of the startling event in question is pure speculation. Because Ms. Anderson has not established sufficient indicia of reliability for the declarant's statement, Qdoba's motion to exclude the statement is **GRANTED**.

### B. Employee deposition and accident reports

Qdoba seeks to exclude as inadmissible hearsay created in anticipation of litigation two internal reports concerning the accident, as well as deposition testimony from one of its former employees, Gonzalo Hernandez Venegas, about these reports. Dkt. 75 at 8–11 ¶¶ 8–9.

#### 1. Former testimony hearsay exception

Ms. Anderson argues that Mr. Hernandez Venegas' deposition is admissible under the former-testimony hearsay exception. Dkt. 91 at 2 ¶ 8

9

(citing Fed. R. Evid. 804(b)(1)).  Qdoba does not dispute that Mr. Hernandez Venegas is now "unavailable" under Fed. R. Evid. 804(a).[4]  And because Mr. Hernandez Venegas gave testimony "as a witness at a . . . lawful deposition" subject to cross-examination, Ms. Anderson is free to offer the deposition, absent specific objections, against Qdoba.  *See* Fed. R. Evid. 804(b)(1).  So to the extent that Qdoba seeks to categorically exclude Mr. Hernandez Venegas' deposition testimony as hearsay, that motion is **DENIED**.

### 2. Loss reports as inadmissible hearsay

Qdoba claims the loss reports are inadmissible hearsay not covered by the "business record exception" under Fed. R. Evid. 803(6).  *See* dkt. 75 at 9.  To qualify as a business record, the record must be of a type made and kept as a "regular practice of" a "regularly conducted activity of a business."  Fed. R. Evid. 803((6).  Absent contrary evidence, "[l]itigation generally is not a regularly conducted business activity."  *Jordan v. Binns*, 712 F.3d 1123, 1135 (7th Cir. 2013).  Because Ms. Anderson has not shown that making loss reports was a regularly conducted activity for Qdoba, the loss reports are not within the scope of the business-records exception.  The Court therefore **GRANTS** Qdoba's motion in limine.

---

[4] At the October 2020 hearing, Qdoba's counsel admitted that Mr. Hernandez Venegas left employment of Qdoba and is now out of state.  *See* dkt. 92-2 at 2.  He is thus "absent from the trial," and Qdoba has not disputed Ms. Anderson's assertion that she "has not been able, by process or other reasonable means, to procure . . . [his] attendance," Fed. R. Evid. 804(a)(5)(A).  Thus, the Court considers Mr. Hernandez Venegas "unavailable" under Rule 804.

### C. Bryan Rappolt's deposition

Qdoba also seeks to exclude "expert Bryan K. Rappolt's opinions in their entirety." Dkt. 76 at 1. Qdoba contends that Ms. Anderson did not supplement her response to its November 2018 discovery request "until the morning of Mr. Rappolt's deposition, October 1, 2020," which "unfairly prejudiced Qdoba by withholding potential evidence" and could result in "trial by ambush." *Id.* at 2 ¶¶ 3–4. Alternatively, Qdoba seeks to exclude certain portions of Mr. Rappolt's deposition, alleging that exhibits referenced in his testimony were "modified" from those in his expert report. *Id.* at 2 ¶ 5.

#### 1. Rule 26 initial disclosures

Rule 26(a)(2)(B) requires an initial disclosure of an expert report containing, among other things, "the facts or data considered by the witness in forming" her opinions. "If a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence . . . , unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). "The purpose of Rule 26(a)(2) is to provide notice to opposing counsel—before the deposition—as to what the expert witness will testify." *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008).

Ms. Anderson alleges that she "served her expert disclosures . . . in accordance" with Fed. R. Civ. P. 26(a)(2) by including Mr. Rappolt's CV, his expert report, a "list of cases in which [Mr.] Rappolt has testified as an expert," and "a statement of [his] compensation." Dkt. 92 at 1–2 ¶ 3; *see* dkt. 92-1

(listing disclosures). At the October 2020 hearing, Ms. Anderson's counsel also contended that Mr. Rappolt's deposition testimony was all within the scope of what was disclosed in the expert report. Mr. Rappolt's report itself states that he "relied on" eight sources of "data and information" in his "meteorological analysis." Dkt. 92-1 at 7.[5] His report also includes tables, photographs, maps, and conclusions. *See id.* Qdoba has not pointed to any specific "facts or data considered by" Mr. Rappolt that his expert report failed to mention. Fed. R. Civ. P. 26(a)(2)(B); *see* dkt. 76. Moreover, Qdoba has not established any unfair surprise because it had at least 13 months between Ms. Anderson's disclosure of Mr. Rappolt as an expert witness and his deposition. *See* dkt. 92-1 at 5 (service of disclosure on August 29, 2019); dkt. 92 at 2 ¶ 4 (deposition on October 1, 2020); *see also Heller v. D.C.*, 801 F.3d 264, 270 (D.C. Cir. 2015) ("Admitting a report with an omission that does not cause 'unfair surprise' [was] harmless."). And Qdoba has not explained, other than the conclusory

---

[5] Specifically, these eight sources of data and information are:

    1. United States Department of Commerce surface weather observations (ASOS), Indianapolis International Airport (KIND).
    2. Citizen Weather Observer Program (CWOP) surface weather observations: IN028, IN031 and E3369.
    3. National Weather Service (NWS) Indianapolis, IN (KIND) WSR 88-D Level II Super Resolution Dual Polarization Doppler radar data.
    4. NWS KIND WSR 88-D Level Ill High Resolution Dual Polarization Doppler radar data.
    5. Federal Aviation Administration (FAA) Indianapolis, IN (TIDS) Terminal Doppler Radar (TDWR).
    6. National Weather Service Forecast Office Indianapolis, IN (NWSFO-KIND) issued products.
    7. Legal complaint filed by plaintiff counsel.
    8. Ambulance triage report of the incident.

Dkt. 92-1 at 7.

assertion of "trial by ambush," dkt. 76 at 2 ¶¶ 3–4, how an alleged omission harms it, *see Gicla v. United States*, 572 F.3d 407, 411–13 (7th Cir. 2009) (upholding admission of untimely-disclosed expert testimony because the failure was harmless).

## 2. Rule 26(e) duty to supplement

Qdoba also argues that Ms. Anderson failed to supplement Mr. Rappolt's expert report in a timely manner in response to its request in November 2018 for "[a]ll reports, records, or other documentation prepared or reviewed by any person who may be called to testify as an expert or skilled witness at the trial of this matter, . . . and copies of all authoritative materials upon which he or she relied or to which he or she referred to form any and all opinions regarding this matter." *See* dkt. 76 at 2 ¶¶ 3–4. Ms. Anderson responded to this discovery request in January 2019. *Id.* Qdoba did not ask Ms. Anderson to supplement that response until the afternoon before the deposition—on September 30, 2020, *see* dkt. 92-2 (email at 3:41 PM). At that time, Qdoba asked for copies of the eight items listed on Mr. Rappolt's expert report. *Id.* In response to the request, Qdoba's counsel received a link to an electronic file containing over 15,000 documents, the "vast majority" of which could not be opened.

At the hearing, Ms. Anderson's counsel argued that all the information that Mr. Rappolt relied upon is in the expert report, which was timely disclosed, and that the electronic file with the 15,000 documents probably represents Mr. Rappolt's entire working file. Ms. Anderson also contends that

13

the 13-month period between disclosure and Qdoba's request prevents any "trial by ambush."  Dkt. 92 at 2 ¶ 7.

Rule 26(e)(2) imposes a duty on the party using an expert witness "to supplement . . . information included in the report and . . . information given during the expert's deposition."  The duty to supplement "in a timely manner" arises if (a) "the party learns that in some material respect the disclosure or response is incomplete or incorrect" and (b) "the additional or corrective information has not otherwise been made known to the parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1).  If a party fails to comply with Rule 26(e), "the party is not allowed to use that information or witness to supply evidence . . . , unless the failure was substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).

Here, Qdoba did not raise the issue of disclosure deficiencies until the afternoon of September 30, 2020—the day before Mr. Rappolt's deposition and almost 10 months after discovery closed, *see* dkt. 13 at 8 (discovery closed on December 6, 2019).  Even then, Qdoba has not established that the initial disclosures were incomplete or incorrect "in some material respect."  *See* Fed. R. Civ. P. 26(e)(1).  The expert report appears thorough and states the specific information relied upon, which should have given Qdoba ample notice of the information in Mr. Rappolt's testimony.  *See* dkt. 92-1.  Qdoba also had ample time to seek supplemental information earlier and has not shown how it has been prejudiced.

14

### 3. Specific objections to expert report

Finally, Qdoba objects to Mr. Rappolt's testimony about three National Weather Service reports, dkt. 76 at 3 ¶ 5, because the exhibits shown to Mr. Rappolt "look[ed] like [they] ha[d] been altered from the document[s] . . . in [the] expert report," dkt. 95 at 13, 14, 17 (Rappolt Dep. 12:10–12, 13:18–20, 16:12–14). Ms. Anderson responds that "[t]he only changes made to [the exhibits] offered at [Mr.] Rappolt's deposition from the exhibits to his expert report were the removal of highlights to the text," which was done "so the record for the deposition would remain clear." Dkt. 92 at 3 ¶ 9. According to Ms. Anderson, this "did not change or alter any of the text contained in the exhibits." *Id.* Her counsel also contends that "this is the type of data relied upon by an expert[,] and it is an official publication by a public authority." Dkt. 95 at 13, 14, 17 (Rappolt Dep. 12:13–15, 13:21–24, 16:15–17). Qdoba does not explain how removing highlighting marks could affect the substance of these exhibits.

In summary, Qdoba has not shown a compelling reason to limit in whole or in part the admissibility of Mr. Rappolt's testimony, so its objections are **OVERRULED**.

## III.
## Conclusion

Ms. Anderson's motion in limine is **GRANTED in part and DENIED in part**. Dkt. [63]. Qdoba's motion in limine is also **GRANTED in part and DENIED in part**. Dkt. [74].

Ms. Anderson's motion to use Bryan Rappolt's deposition testimony at trial, dkt. [59], is **GRANTED**. Consequently, Qdoba's motion for a pre-trial

ruling on the admissibility of Mr. Rappolt's testimony, dkt. [76], is **GRANTED in part** to the extent that the Court **OVERRULES** its objections.

**SO ORDERED.**

Date: 7/15/2021

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Jeanne M. Hamilton
HENNESSEY & ROACH
jhamilton@hennessyroach.com

Shannon Bogard Mize
SHARTZER LAW FIRM, LLC
smize@shartzerlaw.com

Hayleigh Jo Neumann
HENNESSY & ROACH, P.C.
hneumann@hennessyroach.com

Jason A. Shartzer
SHARTZER LAW FIRM LLC
jshartzer@shartzerlaw.com